## TERRITORY OF HAWAII *v.* PONG CHONG, ALIAS PAIPU, AND CHONG DUCK, ALIAS AKAKA.

### ERROR TO CIRCUIT COURT, THIRD CIRCUIT.

ARGUED AUGUST 26, 1910.                DECIDED SEPTEMBER 13, 1910.

PERRY AND DE BOLT, JJ., AND CIRCUIT JUDGE COOPER
IN PLACE OF HARTWELL, C.J.

EVIDENCE—*supports verdict—inferences.*

> There being evidence of certain facts, if believed by the jury, from which facts inferences of guilt could reasonably have been drawn by the jury, the verdict cannot be set aside.

Territory v. Pong Chong, 20 Haw. 229.

COURT—*comment on evidence.*

> It is not error for the court to rule in the presence of the jury that certain evidence is competent, relevant and material, or that the circumstantial evidence adduced is sufficient to require submission of the case to the jury.

### OPINION OF THE COURT BY DE BOLT, J.

This is a writ of error to the circuit court of the third circuit.

The plaintiffs in error, referred to in this opinion as the defendants, were convicted of burglary in the second degree upon an indictment charging that at Niulii, district of North Kohala, in the County of Hawaii, on December 4, 1909, in the day time, they did unlawfully, feloniously and burglariously enter the room of one Ah Su with intent to commit larceny therein, and did then and there unlawfully and feloniously steal, take and carry away money and coin of the value of $1800, the property of Ah Su.

The court sentenced the defendants to imprisonment at hard labor for a period not exceeding ten years and not less than five years.

The assignments of error now relied upon, all others having been abandoned, are: that the evidence does not sustain the charge, and is not sufficient to sustain the conviction; that the court erred in expressing, in the presence of the jury, the opinion that the testimony of the witness, Sam Kaluna, was material; that the court erred in commenting upon the testimony of the witness Kahai Mersberg.

1. The case is one of circumstantial evidence, there being evidence from which the jury could find the following facts: That the defendant, Pong Chong, occupied a room in Ah Su's building as a tailor shop; that he also had a bed in the storeroom in the same building where he slept; that Ah Su's bedroom was in the rear of the storeroom, from which it was separated by a partition about nine feet high, there being an open

space between the top of the partition and the ceiling; that Ah Su kept his money in a trunk in his bedroom, which fact Pong Chong knew; that on December 4, 1909, Ah Su had $1600 in gold and some two or three hundred dollars in silver in his trunk in his bedroom; that he was absent from his premises on the afternoon of December 4th from about 2:30 o'clock until five o'clock; that between three and four o'clock of that afternoon, Pong Chong was seen to open the back door of the storeroom and "peep" out at one Sun Keon, who was engaged in certain work in the rear of the premises, and immediately step back into the storeroom and close the door; that soon thereafter Sun Keon had occasion to go into the storeroom where he saw Pong Chong take a box from a shelf against the partition already mentioned, place it near this partition and get upon it, and upon being asked what he was doing said he was looking for a rat; that at about the same time, i. e., between three and four o'clock, the defendant Chong Duck was seen in the rear of the premises standing near the window of Ah Su's bedroom with a bag over his shoulder; that upon Ah Su's return at about 5 P. M. he went to his bedroom, found the window, which he had closed before leaving, open, the lock of his trunk broken and $1800 of his money, which was in a bag, gone; that Pong Chong was not on the premises when Ah Su returned, but arrived soon thereafter, and upon Ah Su calling his attention to the fact that his money was missing Pong Chong said nothing and very soon thereafter disappeared from the premises; that between seven and eight o'clock that evening the defendants were seen in Chong Duck's house, which was not far from Ah Su's place, with the doors locked and "quite a pile" of money, gold and silver, between them, on a bed, which they were counting; that between nine and ten o'clock the same evening they were heard talking together in a low tone of voice in the storeroom already mentioned; that on the next morning a police officer was at Ah Su's place and upon com-

paring an impression of Pong Chong's foot with a footprint found on the box on which he stood when he was "looking for a rat," the police officer said to him, "Pong Chong you stole that Chinaman's money, where did you put the Chinaman's money you stole? Sure it was you because your footprint is exactly same size as this," to which accusation he made no response, but turned pale; that the police officer then left, and immediately thereafter Pong Chong said to Ah Su, "Don't arrest me and I will settle the matter;" that in a conversation between the defendants at the jail, overheard by two Chinese concealed in an adjoining cell, Chong Duck said, inter alia: "Don't be afraid, no matter how good a friend it is don't tell anything about it. I am going to spend $800 to fight this case out and the remainder $1000 both of us can go back to China with $1000;" whereupon Pong Chong said, "I am not afraid, when I go to room to get money nobody see me. This man in store didn't see me there. When the sheriff examine my footprint, after that I kind of little scared;" and that at the time the case was pending in the circuit court, Chong Duck approached the witness, Sam Kaluna, and said, "Sam, I think you better help me. If you help me I will give you fifty dollars, I get clear. * * * If you turn your evidence, testimony, around."

The theory of the Territory seems to be that the defendants having conspired to steal Ah Su's money Pong Chong accordingly entered the room, broke open the trunk, obtained the bag containing the $1800, opened the window and passed it out to Chong Duck, who was standing at the rear of the room near the window for the purpose of receiving it.

From a careful reading and consideration of the evidence we are of the opinion that, if the jury believed the witnesses for the Territory, and that the jury did so believe must be conceded, the verdict cannot be set aside. We cannot say that the evidence does not sustain the verdict. From the facts

above recited inferences of the guilt of the defendants could reasonably have been drawn by the jury. The question before us is not whether we would have reached the same conclusion the jury did, but whether the evidence adduced was sufficient to support the verdict.

It must be conceded that the jurors who tried the case, heard the witnesses testify, observed their demeanor, their intelligence, their appearance, their bias or prejudice, if any, and many other *indicia,* were in a better position to determine the truth than we are with only the cold record before us.

2. The defendants during the trial of the case having moved that certain evidence of the witness Sam Kaluna be stricken out, the court said, "The court is always very reluctant to pass upon a matter which is material and matter of fact and which should be passed upon by the jury. It is my opinion that the jury sitting in this case should decide the point which is now presented for decision, and of course they will have an opportunity to consider it later on if this motion is not granted and the evidence remains in. The motion to strike is denied."

The defendants contend that the court erred "in expressing in the presence of the jury, the opinion that the evidence was material." We are clearly of the opinion that the court did not err. It is not only within the exclusive province of the court, but it is the plain and positive duty of the court to pass upon the admissibility of all evidence offered—to say what is material and what is not material. The weight and credibility of the evidence of course is for the jury.

3. The Territory having rested the defendants moved that the evidence of Kahai Mersberg be stricken on the ground that it "is incompetent, irrelevant, immaterial and in no way tends to show the guilt of the defendants." The court, in ruling upon this motion, said: "As a crime may be proven by circumstantial evidence, so every essential element of the crime may

be proven by circumstantial evidence. And I take it that in this case it might be proven circumstantially that Akaka (Chong Duck) was present, and that it might be proven circumstantially that he aided, incited, countenanced or encouraged Paipu (Pong Chong) to do what he is alleged to have done. The circumstances of this case as shown by the evidence so far given are such, and appearing to have been such I refuse to grant this motion. Motion to strike the evidence of Kahai Mersberg is denied."

The defendants contend that the court in its remarks, as quoted, commented upon the evidence to their prejudice. We do not so view the language of the court.

It is clearly apparent that the court, in its remarks and ruling upon this motion, only had in mind the question which the motion itself presented, namely, was the evidence competent, relevant and material? And, in denying the motion the court, in effect, answered the question thus presented in the affirmative, i. e., the evidence was competent, relevant and material. The court in its ruling did not invade the province of the jury. The evidence was material and having been properly received the court correctly declined to withdraw it from the jury. And the jurors being reasonable men and at least of ordinary intelligence, as we are bound to assume they were, they must have understood and accepted the remarks and ruling of the court in the sense which is so apparent.

The judgment of the circuit court is affirmed.

*W. B. Lymer, Deputy Attorney General (Alexander Lindsay, Jr., Attorney General, with him on the brief), for the Territory.*

*Lorrin Andrews and Eugene Murphy for defendants.*